## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ─────────────────────────── )<br>IN RE LINERBOARD ANTITRUST )<br>LITIGATION )<br>─────────────────────────── )<br> )<br>THIS DOCUMENT RELATES TO: )<br>Civil Action Numbers 98-5055 )<br>and 99-1341 )<br>─────────────────────────── ) | MDL No. 1261 |

### CLASS COUNSEL'S OPPOSITION TO APPEALS AND MOTIONS OF ALL LATE CLAIMANTS WHOSE LATE CLAIMS WERE REJECTED BY THIS COURT'S ORDER OF JUNE 26, 2005

All but two of the late claimants appealing this Court's denial of their claims as untimely are clients of professional claims solicitation services. These claims solicitation services troll for class members independently of the court notice and, for a high percentage of the value of the claim—class counsel believes thirty-three percent of the claim is standard[1]—contract to submit claims for class members who could, otherwise, have filled out the claim form and received the entire sum. In one case, the claims service itself has apparently bought the class member's claim outright long after the claims period had closed (and after it had missed the claim period for its client) gambling that it could still assert a claim. Class counsel recommends against allowance of any such late claims. This memorandum is accompanied by the supporting affidavit of Michael Bancroft, the claims administrator.

---

[1] *See* form agreement National Recovery Services attached hereto Exhibit A. National Recovery actually obtains a higher percentage per claim for filing a claim than does counsel who litigated the case.

1

With regard to the application of Boxes Etc., Inc., which attests that it filed a timely claim, but that its claim was apparently not received by the claims administrator, class counsel recommends that its claim be accepted for processing.

## BACKGROUND

After a thirty day extension of the claims deadline during which every class member who had not filed a claim received a personal letter from class counsel urging them to avail themselves of the opportunity to file a claim, the claims period closed on May 15, 2004. Class members received at least two notices—the initial notice of the class certification dated April 24, 2003, and the notice of the second group of settlements together with a claim form dated January 9, 2004—in addition to the personal letter of class counsel urging them to file claims dated April 15, 2004. In addition, of course, there was publication notice in the Wall Street Journal on three separate occasions. The earliest claimant in the current group of claimants filed their claim on January 31, 2005. Most, however, were received after February 10, 2005, the date on which the Court had already authorized the initial distribution of class funds. The only funds that were retained were retained in a contingency fund to assure that all claims, including a group of claims received before January 28, 2005 (the date of the report of the claims administrator recommending initial distribution), which the Court had directed be processed, could be paid. On June 28, 2005, this Court entered an order rejecting all late-filed claims.  This memorandum relates to appeals from that order.

According to the affidavits submitted in support of the motions submitted by National Recovery Services, it was not even retained by most of its clients until between eight and twelve months after the claims period in this case closed. In almost all cases it was retained after class counsel filed its report and petitioned to permit the initial distribution. Obviously, court dates

2

cannot be extended for professional claims solicitation services trolling for claims that were not even retained by their clients until long after the date for filing for a recovery in this case passed. There would never be closure. None of the motions demonstrates the slightest basis for any finding of "excusable neglect." Almost every claimant was sent multiple notices, none of which was returned as undeliverable.

The motions of National Recovery Service at least show that the claims services know very well that an appropriate motion with supporting affidavits had to be filed by July 28, 2005 under the Court's order of June 28, 2005. The "objections" filed by its competitor, Lex Recovery Systems, on behalf of its clients, do not present any basis for the appeal and pretend to require the Court's guidance as to what is necessary to perfect an appeal.[2] For the reasons expressed in Class Counsel's letter to the Court of July 26, 2005, all of these appeals should be rejected and no further extension should be granted. The National Recovery Service submissions (and the letter to the claims administrator by Lex Recovery's counsel enclosed with class counsel's letter) show that these claims solicitation services know full well what the procedure is to support a late claim.

The only fund still retained is a fund that was to assure that all timely and approved claims by January 28, 2005, would be fully paid. It was not retained for the purpose of paying claims filed eight to twelve months after the claims period closed.

Allowance of these late claims would commence an audit process and will unfairly delay final distribution.

---

[2] Lex has filed appeals on behalf of Amarillo Custom Box Company and Dallas Container Corp. even though the Court approved their late filings in its Order of June 26, 2005.

3

## The Standard is Excusable Neglect And It Has Not Been Met

The standard for accepting a late claim is "excusable neglect." Excusable neglect requires some showing. It is not just a rubber stamp to approve late claims. As the Third Circuit recently explained in a far less egregious context than that presented here, in affirming Judge Bartle's recent denial of late-filed claims:

> In order to register for benefits under the Settlement Agreement in the Diet Drug Class Actions, appellant Deborah Badarzynski was required to return her Blue Form to the AHP Settlement Trust ... by May 3, 2003. She did not do this until November 21, 2003. Applying the "excusable neglect" standard set forth in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.,* 507 U.S. 380 (1993), the District Court concluded that Badarzynski's untimely filing was not attributable to such neglect. We find the analysis set forth in its opinion persuasive and cannot say that the District Court abused its discretion.

> Ms. Badarzynski had actual notice of the deadline for registration and learned ten days before the deadline that her attorney may have failed to effectuate her registration as she intended. She nevertheless waited over six months to advise the Trust of her desire to register. Thus, this case is far different from *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315 (3d Cir.2001).

*In re Diet Drugs Prods. Liab. Litig.,* — F. Appx. —, 2005 WL 1349850, at *1 & n.1 (3d Cir. 2005) (unpublished); *see also In re Cendant Corp. Prides Litig.*, 311 F.3d 298 (3d Cir. 2002).

Judge Bartle had explained in an earlier opinion that good faith alone and mild or insignificant prejudice to the fund itself were not alone sufficient to meet the standard:

> It is the third prong of *Pioneer,* the reason for the delay, including whether it was within the reasonable control of the movant, that is determinative for these claimants. *See[Pioneer,* 507 U.S. at 395]. While the prejudice to the Trust and the effect on judicial proceedings would not be great if we granted extensions for this limited number of claimants, and although the claimants may have acted in good faith, we find that they have not met the excusable neglect standard meriting extensions.

*In re Diet Drugs Prods. Liab. Litig.*, 2004 WL 1171220, at *2 (E.D. Pa. May 26, 2004).

There are no good reasons for vacating the rejections and granting the appeals. They are discussed seriatim below:

## The National Recovery Service Claims

*Bumble Bee.*  The Bumble Bee motion is not filed on behalf of Bumble Bee. It is filed on behalf of National Recovery Service. The motion is signed by W. Shannon Hamilton of National Recovery Services. Unlike the other motions filed by National Recovery's clients, it is not signed by the client. Also in contrast to the other motions filed by other National Recovery Service claimants, it is entitled "Motion to Allow Late Filing of Claim Number 10212, Submitted by National Recovery Services, Inc." rather than a motion on behalf of the claimant itself. Again in contrast to the other claims filed by National Recovery Service, it is not supported by any affidavit of an officer of the claimant, Bumble Bee, or a trustee in bankruptcy. It is supported by an affidavit of W. Shannon Hamilton of National Recovery Services. If Mr. Hamilton is submitting the affidavit as a witness, he is not competent to make the averments regarding whether or not Bumble Bee or its trustee or creditors were aware of the *Linerboard* litigation notice as he had nothing to do with Bumble Bee until National Recovery was retained in February, 2005, long after the notices were sent to Bumble Bee. It is also unclear whether he is pursuing the claim on behalf of Bumble Bee or on behalf of National Recovery Services. According to his affidavit, National Recovery purchased the rights of Bumble Bee to file a claim in the *High Fructose Corn Syrup Litigation* on February 8, 2005, and that very day filed a claim for Bumble Bee in the present case.

The affidavit is neither plausible nor true. As the affidavit of the claims administrator makes clear, Bumble Bee was sent each of the notices as well as the letter of counsel advising that the claims period was extended to May 15, 2004, and urging that a claim be filed. None of the notices was returned as undeliverable. The affidavit of the claims administrator states that the

Bumble Bee claim was filed on behalf of National Recovery Service. It is not filed on behalf of Bumble Bee, but on behalf of National Claims Recovery.

In fact, the affidavit submitted on behalf of Bumble Bee by W. Shannon Hamilton is so patently misleading, if not blatantly false, as to warrant court action. Among the documents National Recovery Services provided is its Recovery Services Agreement with B.B. Liquidation Corporation, i.e., Bumble Bee, dated *May 5, 2004*.[3] This is in sharp contrast to the Hamilton affidavit which seeks to give the impression that  the relationship with Bumble Bee first began on *February 8, 2005* and that "National Recovery Services, Inc. then immediately undertook to assist Bumble Bee in documenting and submitting the Linerboard claim." [Hamilton Affidavit.] Under the very first paragraph of the May, 2004, agreement, National Recovery Services ("NRS") was specifically required "to notify Client of pending anti-trust proceedings in which the Client may have an opportunity to make a claim and to receive payment from such anti-trust proceedings (a 'Claim'). In addition NRS agrees to assist Client in filing the required claim form...."

There is no reason to recognize a claim apparently purchased by a speculator after the close of claims period—particularly under the circumstances described. National Recovery knew of the Linerboard settlement and claims period—that was its business—but apparently neglected to notify its client. It then bought the client's claim months after the close of the claims period, and now seeks to recover the claim for itself by submitting a patently misleading affidavit

The cavalier behavior of National Recovery  Service with regard to the Bumble Bee claim and the misleading nature of its submissions raises fundamental issues with regard to each of the other claims that it has submitted over the signature of W. Shannon Hamilton. While the

---

[3] The Agreement is attached hereto as Exhibit "A."

various motions to allow the late filings that were collectively submitted by National Recovery are signed by various people (though all also contain an affidavit by Hamilton), all of the late Claim Forms at issue are attested to by Hamilton.   Moreover, all of the affidavits and motions are clearly on forms provided to the customers by National Claims Recovery—raising other fundamental issues, such as unauthorized practice of law. Class counsel recommends all such claims be disallowed as late claims for which inadequate excuse for late filing has been provided.

   *Ace Baking Company, American Candy Company, Chattanooga Bakery, Inc., Northwood Flavors, Portland Bottling Company Sterling Packaging, Auto Style Plastics and Herb Farm.* These entities present claims of companies that are apparently in bankruptcy—or trustees of such companies—that in January and February 2005 retained National Recovery Service to assist them in filing claims in *other* cases. Six of those companies— Ace Baking Company, American Candy Company, Chattanooga Bakery, Inc., Northwood Flavors, Portland Bottling Company and Sterling Packaging—were sent both notice letters as well as the follow up letter of counsel. None of these notices were returned as undeliverable.[4] None of the affidavits state that the notices were not received. They only state that the particular notices were not brought to the attention of the various trustees or creditors. Each states that they "did not see the linerboard case settlement and claim form." This boilerplate language, apparently drafted by National Recovery Service for each of its customers does not constitute excusable neglect.  For one thing, most of the affiants are not competent to make the affidavit. Assuming they are all executed by a trustee (they are not), how would the trustee know if any of the creditors were aware of the Linerboard settlements? Most are not filed by the trustee and are not filed on personal knowledge.

---

[4] The only notice returned as undeliverable was that to Herb Farm.

The American Candy Company affidavit is executed by the Chairman of American Candy, not the trustee. While it states that the trustee and or creditors did not see the notice, like the others, it does not say the notice was not received. Herb Farm is not filed by a trustee, but by its Chief Executive Office; it simply states that it is in bankruptcy and did not see the claim form.

It is impossible to determine what LaSalle Bank's status is in filing for Portland Bottling. It does not identify its relationship and simply states that "LaSalle Bank Association did not see the notice of the linerboard case settlement and claim form." There is no indication of why this might be relevant. Who is LaSalle Bank and what is LaSalle Bank's relationship with Portland Bottling? Did Portland Bottling get the claim form? Yes, according to the affidavit of the claims administrator it was sent two notices and the follow up letter. None were returned as undeliverable.

Ace Baking is supported by an affidavit of an "agent" of a trustee. The nature of the agency is never explained and the agent of the trustee can hardly state upon personal knowledge the information regarding receipt of the notice.

But the point is that none of these affiants—all of whom have submitted affidavits claiming that the affiants or persons on behalf of whom the affiants claim to be filing the affidavits did not "see" the notice and claim form—state that the entities on behalf of which the claim is being filed did not receive the claim forms. They are hasty form affidavits drafted by a commercial claim solicitation service that was not even retained by the entities filing the claims until seven to ten months after the date for filing claims closed. In light of the misleading affidavit submitted by National Recovery Service on its own behalf, the affidavits it drafted for its clients should be read with particular scrutiny. None presents valid grounds for approving a late claim.

8

*Goya De P.R.* Goya De. P.R., a food company with distribution throughout the United States, provides no excuse at all for not filing a timely claim. Its claim is also submitted through National Recovery Services.  It claims:

> Most of our company officials speak English as a second language and did not see the notice of linerboard case settlement and claim form. Therefore we were not aware of the ability to file a claim until someone had spoken with us and explained the availability of funds for us to possibly reclaim for overpayment of purchases

The Court need only visit the elaborate web site of Goya (in excellent colloquial English) to see how stretched this excuse is. *See* http://www.goya.com/english/.  Goya described itself as follows:

> The 2,500 employees worldwide produce products that are available in local grocery stores and supermarket chains throughout the United States, Puerto Rico, and international markets. Its manufacturing and distribution centers are located in Secaucus and West Deptford, New Jersey; Bayamón, Puerto Rico; Seville, Spain; Santo Domingo, Dominican Republic; Angola, New York; Webster, Massachusetts; Bensonville, Illinois; Miami and Tampa, Florida; Houston, Texas; and the City of Industry, California.

Again, it strains credulity for the company to assert that it is able to do business to the degree it describes with key manufacturing and distribution centers and thousands of employees in the United States, without having outstanding command of English. Indeed, just compliance with the regulatory environment alone would require far greater command of English than would the command of English necessary to read a claim form. The notice was written in simple English. The Court took pains to use a simple question and answer format in colloquial English. The company knew enough English to do business throughout the United States and to retain National Recovery Services, Inc. in the *High Fructose Corn Syrup Litigation.* The use of

inadequate English as an excuse in this instance is an insult to people for whom lack of command of English is a genuine impediment.[5]

*Watsonville Airport Center.* Watsonville Airport Center appeals disallowance of a claim it filed earlier. Watsonville received two letters from the claims administrator seeking documentation for what it represented to be a twelve million dollar claim. The requests were ignored. The second of these requests was sent last January, advising Watsonville that its claim was being rejected for want of documentation and that it had ten days to submit documentation. It ignored the letter. Its claim was finally rejected.

On July 26th, National Recovery Services faxed the claims administrator that Watsonville Airport Center would be sending documentation of its claim. There is no excusable neglect whatsoever in the case of Watsonville Airport Center. It filed a claim. Its claim was processed. It was given full notice of what had to be done to cure defects in its submission. It ignored this correspondence. It was given final notice that its claim was being rejected and that it had to respond. It ignored this as well.

The fact that some private enterprise trolling for business later discovered the rejected claim is no excuse to revive the rejected claim where every opportunity was given to file the necessary substantiation.

*Everfresh Beverages Inc.* The late claim for Everfresh was also filed by National Recovery Service. However, the motion on its behalf is filed by the Obermayer firm, representing the trustee. As Exhibit B to the affidavit of the claims administrator makes clear, notices were sent to four different Everfresh addresses on three different occasions. None was

---

[5] While not at issue at this juncture, Goya does not appear to be a member of the class in the first instance.

returned as undeliverable. In addition, of course, there was ample, prominent publication notice in the Wall Street Journal. There is no excuse for the late claim.

**The Lex Recovery Claims**

*The objections filed by Lex Recovery Systems.* The date for filing objections has passed. The objections filed by Lex are entirely unsupported—even though Lex, a professional claims solicitation service, fully understood what was required, as evidenced by a letter of its counsel to the claims administrator. Moreover, as the affidavit of the claims administrator makes clear, every one of the Lex objectors was sent a copy of each notice and the letter of counsel; none was returned.

**CONCLUSION**

For the above reasons class counsel recommends that the appeals of all claims, except for that of Boxes Etc., be denied.

Respectfully submitted,


_____/s/ Howard Langer_____ (HL734)
Howard Langer
Langer & Grogan, P.C.
1600 Market Street
Suite 2020
Philadelphia, PA  19103
215-419-6544
Fax: 215-419-6546

**Plaintiffs' Liaison Counsel for All Actions
And Lead Counsel for the Corrugated Box Plaintiffs**


Dated:  August 1, 2005

11



## NATIONAL RECOVERY SERVICE Inc.

1133 Roselawn Ave. W.,    St. Paul, Minnesota   55113      651-488-8933                                    Fax: 651-489-7620

### RECOVERY SERVICES AGREEMENT

This Recovery Services Agreement ("Agreement") is made and entered into by and between National Recovery Services, Inc. ("NRS") and ___B.B. Liquidation Corp___ ("Client"). For good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      **Services.** NRS agrees to notify Client of pending anti-trust proceedings in which the Client may have an opportunity to make a claim and to receive payment from such anti-trust proceedings (a "Claim"). In addition, NRS agrees to assist Client in filing the required claim forms, to the extent that Client requests NRS' assistance with such forms, in writing.

2.      **Payment.** Within ten (10) days of each payment to or on behalf of the Client relating to Client's Claims (the "Recovery"), Client shall pay to NRS one third (1/3) of such Recovery ("Service Fee"). In the event any Service Fee is not paid within five (5) days of the due date, such Service Fee shall bear interest at the lesser of 18% per annum or the maximum interest rate allowed by law from the due date until paid in full.

3.      **Notices.** All notices and payments required or permitted to be given under this Agreement shall be in writing. Unless a party changes its address by giving notice to the other party as provided herein, notices shall be delivered to the parties at the addresses set forth next to their signatures below.

4.      **Governing Law; Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon. Any dispute arising out of this agreement shall be resolved in a court of appropriate court of jurisdiction located in Multnomah County, Oregon. Each of the parties hereto consents and submit to the personal jurisdiction of the state and federal courts located in Multnomah County, Oregon.

5.      **Attorneys' Fees.** If any suit or action to enforce the terms of this Agreement is brought by either party, the prevailing party shall be entitled to recover all of its costs and fees associated with such suit or action, including without limitation reasonable attorneys' fees, copying, courier and telecommunication costs, costs associated any post-trial or appellate proceeding, or in the collection or enforcement of any judgment or award entered or made in such suit or action.

6.      **Continuing Agreement; Binding Effect.** This Agreement shall bind and inure to the benefit of, and be enforceable by, the parties and their respective successors, heirs, and permitted assigns.

7.      **Counterparts.** This Agreement may be executed in any number of counterparts, all of which when taken together shall constitute one agreement binding on all parties, notwithstanding that all parties are not signatories to the same counterpart.

NATIONAL RECOVERY SERVICE, INC.

By: _____

Its: _Vice President_

Date: _5-11-04_

Address: P.O. Box 7362
Klamath Falls, Oregon 97602-0362

CLIENT: _____

By: _____

Its: _President_

Date: _5/11/04_

Address: _13227 Oakland Road_
_Lowry, CA 95064_

Klamath Falls, Oregon Branch Office: Tel: 541.783.3150 Fax: 541.783.3827