**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| | ) | |
| **IN RE LINERBOARD ANTITRUST** | ) | **MDL No. 1261** |
| **LITIGATION** | ) | |
| ————————————————— | ) | |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| **Civil Action Numbers 98-5055 and 99-1341** | ) | |
| | ) | |
| ————————————————— | ) | |

**DUBOIS, J.**                                                          **JULY 15, 2008**

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................... 2

II.  BACKGROUND ........................................................ 5
    A.  The Linerboard Class-Action Settlement and Fee Allocation ............... 5
    B.  Peoples' Lawsuit ............................................... 6
    C.  Peoples' Initial Telephone Messages .................................. 9
    D.  The Emergency Temporary Restraining Order and Consent  Stipulation Order . 10
    E.  Peoples' Letter to the Disciplinary Board ............................. 11
    F.  Peoples' Telephone Message of June 29, 2006 ......................... 12
    G.  The Contempt Hearing ........................................... 13
    H.  Peoples' Actions Towards Langer After June 29, 2006 ................... 14

III.  JURISDICTION ...................................................... 14
    A.  Jurisdiction to Enjoin Actions in Other Forums ........................ 15
        1.  Overview ................................................. 15
        2.  Legal Standard ............................................. 16
        3.  Analysis .................................................. 18
    B.  Jurisdiction to Enter the Emergency TRO and the Consent  Stipulation Order . 21
        1.  Legal Standard ............................................. 21
        2.  Analysis .................................................. 22
    C.  Jurisdiction Over Peoples v. Langer, Civil Action No. 04-2785 ............. 23

IV.  STANDARD OF REVIEW - CONTEMPT MOTION ........................... 24

V.  DISCUSSION - CONTEMPT MOTION .................................. 25
    A.  Contempt .................................................... 25
        1.  The Emergency TRO and Consent Stipulation Order ............... 25
            a.  Validity of Emergency TRO and the Consent Stipulation Order . 25

        b.     Knowledge of the Emergency TRO and the Consent Stipulation
Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        c.     Violation of the Emergency TRO and the Consent Stipulation
Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    2.     The All Writs Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        a.     Validity of the All Writs Act Injunction . . . . . . . . . . . . . . . . . . 28
        b.     Knowledge of the All Writs Act Injunction . . . . . . . . . . . . . . . . 30
        c.     Violation of the All Writs Act Injunction . . . . . . . . . . . . . . . . . . 30
  B.     Contempt Remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VI.    IMPOSITION OF DISCIPLINARY SANCTIONS AND REFERRAL TO THE CHIEF
JUDGE FOR AN ORDER TO SHOW CAUSE WHY PEOPLES SHOULD NOT BE
SUSPENDED FROM THE PRACTICE OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    1.     Telephone Messages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    2.     Letter to the Disciplinary Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    3.     Statements Made During the Contempt Hearing . . . . . . . . . . . . . . . . . . 34

VII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**MEMORANDUM**

## I. INTRODUCTION

Currently before the Court is Howard Langer's Motion for an Order Holding John

Peoples, Esquire in Contempt, Imposing Disciplinary Sanctions Upon Him, and Referring his

Behavior to Chief Judge Bartle for an Order to Show Cause Why He Should Not Be Suspended

From Practice and Request for Expedited Hearing (Document No. 838, filed July 5, 2006).  Five

motions pertaining to the Motion for Contempt are also before the Court: (1) Motion of Howard

Langer, Esquire, and Langer & Grogan, P.C. to Stay the Peoples Action; (2) John Peoples'

Motion to Dismiss the Complaint[1] Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1); (3)

John Peoples' Motion to Dismiss Any Reference to a TRO Which Was Entered Improperly After

---

[1] There is no "complaint" currently before the Court in this matter.  The action was
dismissed by Order dated November 16, 2004.  Peoples' motions to dismiss all pertain to
Langer's Motion for Contempt.

the Case Was Dismissed With Prejudice;[2] (4) a Cross Motion by Howard Langer to Strike Peoples' Proposed Findings of Fact, Conclusions of Law and the Memorandum of Law in Support of the Motion to Dismiss; and, (5) John Peoples's Motion to Compel.[3]

All of the Motions arise out of a dispute between John F. Peoples, Esquire ("Peoples"), and Howard Langer, Esquire ("Langer"), over a referral fee in the underlying Linerboard antitrust class action, MDL 1261.[4]  After the Linerboard class action was settled, Peoples filed an action against Langer in the Court of Common Pleas of Philadelphia County in which he sought a referral fee. That action was removed to federal court and docketed as Civil Action No. 04-2785. The Peoples case was settled for $2.92 million following extensive conferencing before United

---

[2] Peoples' counsel, Frank Marcone, incorrectly filed these motions in Civil Action No. 04-2785, rather than in MDL No. 1261.  By Order dated June 1, 2007, the Court directed the Clerk of Court to correctly docket Peoples' filings in MDL No. 1261.

[3] On February 22, 2008 (in Civil Action No. 98-5055) and March 20, 2008 (in MDL 1261), Langer filed a second contempt motion arising out of the filing by Peoples of a lawsuit in Delaware County, in violation of the All Writs Act injunction.

Peoples also filed two recusal motions – a Motion for Recusal Under 28 U.S.C. §§ 455(a) and 455(b), and a Supplemental Motion to Recuse.  Those motions were denied by Memorandum and Order dated July 14, 2008.

[4] As the Court explained in In re Linerboard Antitrust Litig., 2004 WL 1221350 (E.D. Pa. June 2, 2004 ), Langer

was approached by an attorney representing a purchaser of boxes from Stone who asked if liaison counsel would research the possibility of bringing an action on behalf of purchasers of corrugated boxes from Stone.  That lawyer, John Peoples, had approached other antitrust lawyers with his client's claim but they all had declined to pursue the matter.  Liaison counsel concluded that In re Sugar Industry Antitrust Litig., 570 F.2d 13, 19 (3d Cir. 1978) provided a viable, if unused (in the class action context), exception to Illinois Brick under which suit could be instituted against Stone.

Id. at *6.

States Magistrate Judge Thomas J. Rueter.  It was dismissed with prejudice on November 16, 2004, by agreement of the parties, pursuant to Local Civil Rule 41.1(b).

The Motion for Contempt arises out of an allegedly threatening telephone message left on the voicemail of Langer, liaison counsel for the class-action component of MDL No. 1261, on June 29, 2006.  The Court concludes that, in making that telephone call, Peoples violated the broad agreed-upon injunction orders of March 22, 2005 and September 8, 2005, and the All Writs Act Injunction issued July 6, 2004.  However, after considering the circumstances and consequences of Peoples's actions – specifically, the actual language in the telephone message giving rise to the contempt motion, the fact that there have been no further violations since June 29, 2006, and Peoples' physical and mental health – the Court declines to impose sanctions on Peoples.  In so ruling, the Court explains the bases of its jurisdiction over this dispute, which will end upon the termination of the class action phase of MDL No. 1261.  An order and memorandum terminating the class action phase of MDL No. 1261 will issue upon receipt of a supplemental Report of the Claims Administrator.

On the present state of the record, and without addressing the merits, the Court declines to impose disciplinary sanctions upon Peoples or refer Peoples' behavior to Chief Judge Bartle for an order to show cause why he should not be suspended from practice.  This drawn-out personal quarrel between Langer and Peoples must end – it warrants no further imposition upon the judicial system.

Accordingly, Howard Langer's Motion for an Order Holding John Peoples, Esquire in Contempt, Imposing Disciplinary Sanctions Upon Him, and Referring his Behavior to Chief Judge Bartle for an Order to Show Cause Why He Should Not Be Suspended From Practice and

Request for Expedited Hearing ("Motion for Contempt") is denied.[5]  Peoples's Motions to

Dismiss, which raise jurisdictional questions, are denied by reason of the Court's determination

that it has jurisdiction.[6]

## II.    BACKGROUND

In a previous Memorandum addressing the Motion by Howard Langer for Protective

Order and to Compel, the Court set forth an abbreviated procedural and factual history of this

matter.  To resolve the Motion for Contempt, the Court now details the full history of this dispute

between Langer and Peoples.

### A.    The Linerboard Class-Action Settlement and Fee Allocation

On March 21, 2004, the Court granted final approval of the last two partial settlements of

the class-action component of MDL 1261.  In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631

(E.D. Pa. 2003).  With the Court's approval of these "settlements, all claims in the class action

were resolved for a total of $202,572,489."  In re Linerboard Antitrust Litig., 2004 WL 1221350,

*2  (E.D. Pa. June 2, 2004).

On June 2, 2004, this Court awarded "a counsel fee of 30 percent of the total settlements

of $202,572,489 ("Settlement Fund") to all counsel *with allocations to specific firms to be made

by liaison counsel, Howard Langer, Esquire . . . .*"  Order of June 2, 2004 (emphasis added); see

also In re Linerboard Antitrust Litig., 2004 WL 1221350, *2 (E.D. Pa. June 2, 2004) (concluding

"that consideration of the seven Gunter factors counsels in favor of awarding petitioners their

---

[5]In view of this ruling, Howard Langer's Motion to Stay the Peoples Action and Peoples's
Motion to Compel are denied as moot.

[6]Langer's Cross-Motion to Strike Peoples's Proposed Findings of Fact, Conclusions of
Law and a Memorandum of Law in Support of the Motion to Dismiss is denied as moot.

requested fee").  Langer allocated two million dollars to Peoples for his contribution to the case.
(May 3, 2007 Hr'g Tr. 27.)  According to Peoples, he "made it very clear [to Langer] that I
[Peoples] was going to get very angry if he didn't come up with more money."  (May 3, 2007
Hr'g Tr. 27.)

By Order dated June 4, 2004, the Court amended the Order of June 2, 2004 to include,
*inter alia*, the following language: "the Court RETAINS jurisdiction over this case including
jurisdiction over the Settlement Fund and its distribution, as well as all issues relating to the fees
and costs of counsel in this action."  In re Linerboard Antitrust Litig., 2004 WL 1240775, *1
(E.D. Pa. June 4, 2004).  The Court has on several other occasions explicitly retained jurisdiction
over matters related to the distribution of the Settlement Fund.  See, e.g., In re Linerboard
Antitrust Litig., 333 F. Supp. 2d 343, 344 (E.D. Pa. 2004) ("The Court retains continuing
jurisdiction over this matter including jurisdiction over the Settlement Fund and its distribution,
the Funds to be distributed pursuant to this Order, as well as all issues relating to the fees and
costs of counsel in this action.").

### B.    Peoples' Lawsuit

On June 23, 2004, Peoples filed a complaint in the Court of Common Pleas of
Philadelphia County.  In his Complaint, Peoples alleged that he was entitled to four million
dollars in attorney's fees from the settlement of the box class-action component of MDL 1261, as
well as punitive damages and attorney's fees.  (Peoples' Compl. ¶ 49.)  He also asked the court to
order Langer "to, first, escrow $6 million pending the final outcome of the litigation and . . . upon
such final outcome of the litigation, to pay over to Plaintiff said $6 million . . . ."  (Peoples'
Compl. ¶ 67.)

On June 24, 2004, Langer removed the Peoples case to the United States District Court

for the Eastern District of Pennsylvania.  The Notice of Removal stated that

> Plaintiff's Complaint seeks a constructive trust on attorneys' fees awarded in a class action entitled In re Linerboard Antitrust Litigation, MDL No. 1261.  Plaintiff has also sought a preliminary and permanent injunction with respect to such fees.  The allocation of those attorneys' fees is currently pending in this Court before the Honorable Jan E. DuBois.  This Court has and is currently exercising jurisdiction over the res that is the subject matter of the constructive trust and injunction sought by plaintiff, namely, the common fund generated by the Linerboard settlements.

Notice of Removal ¶2.  This case was captioned John F. Peoples v. Howard Langer, Esq. and

Langer & Grogran, P.C., Civil Action No. 04-2785.

By Order dated July 6, 2004, issued pursuant to the All Writs Act ("All Writs Act

Injunction"), the Court enjoined "all attorneys who participated in any way in MDL 1261

including, but not limited to, John F. Peoples, Esquire, and all persons acting in their behalf . . .

from taking any further action relating to the allocation of fees in MDL 1261, or the action of

liaison counsel in connection therewith, in any court or forum other than the United States

District Court for the Eastern District of Pennsylvania."[7]  The Court stated that the injunction

was "necessary to preserve the Court's jurisdiction over all matters relating to the award and

allocation of counsel fees in MDL 1261."  Order of July 6, 2004 (citing In re Synthroid Mktg.

Litig., Civil Action No. 97-6017 (N.D. Ill. Aug. 22, 2003)).

On July 9, 2004, Peoples filed a motion to remand his suit for counsel fee.  On that same

date, Langer filed a Motion to Stay the Peoples Action, to Consider the Status of the 7/6/04 All

---

[7] The order was without prejudice "to the right of John F. Peoples, Esquire, or any other party to seek a remand of any case pending in this District which concerns the allocation of counsel fees in MDL 1261, or the actions of liaison counsel in connection therewith."  Order of July 6, 2004.

Writs Act Injunction in the Event of a Remand of the Peoples Action, and to Schedule a Hearing on Liaison Counsel's First Request for Determination of Allocation in MDL 1261.  Three days later, on July 12, 2007, Peoples filed a Motion to Dissolve the All Writs Act Injunction.

By Order dated September 27, 2004, upon the joint request of the parties for mediation, the Court referred Peoples v. Langer, Civil Action No. 04-2785, to United States Magistrate Judge Thomas J. Rueter for settlement conferences.  After several conferences before Judge Rueter, Peoples and Langer reached a settlement agreement on December 22, 2004. ("Settlement Agreement").  The Settlement Agreement provided that, "[i]n the full and final settlement of Mr. Peoples' claims set forth in the Action against Mr. Langer . . . , Mr. Langer shall cause to be paid to Mr. Peoples from the amount awarded as counsel fees in MDL 1261 . . . the sum of $2,940,000."  (Settlement Agreement ¶ 2.)  The Settlement Agreement also provided as follows: "Mr. Peoples specifically states that, notwithstanding a statement he made concerning a possible disciplinary complaint against Mr. Langer, he neither has nor knows of any ground for such a complaint."  (Settlement Agreement ¶ 6.)  By Order dated November 16, 2004, "it having been reported that the issues between the parties in the above action have been settled," the Court dismissed Peoples v. Langer, No. 04-2785 with prejudice pursuant to Rule 41.1(b) of the Local Rules of Civil Procedure of this Court.

As a result of the settlement and the dismissal order, by Order dated November 17, 2004, all of the motions in the Peoples action including, but not limited to, Peoples's Motion for Remand and Langer's Motion for a Stay, and Peoples's Motion to Dissolve the All Writs Act Injunction, were denied as moot.

### C.    Peoples' Initial Telephone Messages

From July 17, 2004 through March 17, 2005, while <u>Peoples v. Langer</u>, No. 04-2785 was

pending and after it was dismissed, Peoples left a series of ten telephone messages on Langer's

voicemail.

1.    On July 17, 2004, Peoples stated "This is just Judge Jacob Dubinsky calling."

2.    On August 19, 2004, Peoples stated "Howie, I'm going to make you famous.  You're
      going to be in the newspaper."

3.    In an undated message, Peoples stated "Yeah, Howard.  I hope you enjoy the newspaper
      coverage that's – that's uhh, coming up right after we settle.  Bye-bye."

4.    In an undated message, Peoples stated "Hey, Howie - I hope you like the letter that we
      write to the Disciplinary Board."

5.    In an undated message, Peoples stated "Yeah, Howie – I wonder if Sandals Knows you
      made $30 million.  He's gonna find out."

6.    On January 7, 2005, Peoples stated "Howie, it's Johnny.  I haven't forgotten about,
      Howie.  Bye-bye."

7.    On January 8, 2005, Peoples stated

            Howie, it's Johnny again.  I wanted to let you know last night I had a nice
            conversation with one of the defense bar who is very friendly with some right-
            wing people and people on the Senate Judiciary Committee and, um, he thinks it's
            a lost a certainty that they are going to have hearing on, ahh, Linerboard, Howard,
            and you can get called as a witness.  Better bone up on your Fifth Amendment
            law, Howie.  Bye.

8.    On March 14, 2005, at 3:09 am, Peoples stated "I haven't forgotten you, Howard."

9.    On March 14, 2005 at 1:43 pm, Peoples left another message, which was unintelligible.

10.   On March 17, 2005, Peoples stated "I haven't forgotten, Howard."

(Langer's Emergency Mot. for TRO, Document No. 631, Ex. A)

Peoples admitted several times during the Contempt Hearing that he left each of these

9

telephone messages, but denied that they were threatening.  (May 3, 2007 Hr'g Tr. 43-44, 52, 88-

103.)  Peoples testified that he left those messages "[t]o just express my anger and also to let

[Langer] know that [he] better never ask me for another case."  (May 3, 2007 Hr'g Tr. 44.)

According to Peoples

> I was not happy about the settlement [in Peoples v. Langer, No. 04-2785], I didn't want to
> settle and I was despondent about it for months and years . . . Like I said, that . . . was the
> proudest day of my life when [the box class-action component of MDL 1261] got settled
> and Howard [Langer] ruined it.

May 3, 2007 Tr. at 94.

**D.    The Emergency Temporary Restraining Order and Consent
        Stipulation Order**

In order to stop the harassing telephone messages, on March 21, 2005, Langer filed an

Emergency Motion for a Temporary Restraining Order in MDL No. 1261.  By Order dated

March 22, 2005 ("Emergency TRO"), agreed to by the parties, the Court granted that motion.

The Emergency TRO provided as follows:

> 1.  John F. Peoples is HEREBY ENJOINED from having any contact or other
> communication, or leaving any messages for Liaison counsel, Howard Langer, and,
>
> 2.  John F. Peoples is HEREBY ENJOINED from making any defamatory statements
> regarding Howard Langer, and from undertaking any other action of any kind, directly or
> indirectly, having the intended or the necessary effect of harming Howard Langer or his
> family in any fashion.
>
> IT IS FURTHER ORDERED that this Temporary Restraining Order . . . shall, by
> agreement of the parties, remain in effect until further order of the Court but shall not be
> filed of record unless there is a reported violation of the Temporary Restraining
> Order. . . .
>
> IT IS FURTHER ORDERED that this Temporary Restraining Order shall be held in
> STRICT CONFIDENCE by the parties to this proceeding and their attorneys, and shall
> NOT BE DISCLOSED to any other party without prior Court approval.

On September 8, 2005, the Court issued a Consent Stipulation Order, agreed upon in

10

form by the parties.  That order provides as follows:

> [W]ithout any admissions by either party and purely to avoid the expense of litigation, the parties having reached agreement to the terms reflected in this Court's Temporary Restraining Order issued on March 22, 2005, IT IS ORDERED as follows:
>
> The Order dated March 22, 2005 shall by agreement of the parties remain in effect on the following conditions:
>
> IT IS ORDERED that said Order shall remain in effect until such time as the Court is satisfied that there is no longer a need for it, but shall not be filed of record unless there is a reported violation of that Order.
>
> IT IS FURTHER ORDERED that this Court retains jurisdiction to enforce the terms of this Consent Stipulation Order and the Temporary Restraining Order;
>
> IT IS FURTHER ORDERED that this Consent Order shall be held in STRICT CONFIDENCE by the parties to this proceeding and their attorneys, and SHALL NOT BE DISCLOSED to any other person without prior Court approval.
>
> It having been represented to the Court by John F. Peoples' counsel that John F. Peoples has discussed this form of Order with him and that John F. Peoples consents to the issuance of this Order to the parties and that the Order shall be issued but not entered, IT IS FURTHER ORDERED that John F. Peoples waives any right to contest the issuance of this Order and the right to contest its effect because it has been issued but not entered.

As Peoples conceded during the Contempt Hearing, the purpose of issuing but not filing the Emergency TRO and the Consent Stipulation Order was to protect Peoples.  ((May 3, 2007 Hr'g Tr. 55.)  On that issue, Peoples' attorney was concerned that, if recorded, the Emergency TRO and the Consent Stipulation Order could have been used in disciplinary proceedings and could harm Peoples' legal practice.

### E. Peoples' Letter to the Disciplinary Board

In a letter to the Disciplinary Board dated October 19, 2005, Peoples "lodge[d] a formal complaint against Howard Langer, Esquire . . . in connection with his refusal to honor his contractual responsibility to pay [him] a co-counsel fee of approximately 4.7 million dollars . . . ."  (Lead Counsel's Mem. on Potential Disciplinary Violations, Ex. B at 1.)

11

**F.      Peoples' Telephone Message of June 29, 2006**

On June 29, 2006, Peoples left another telephone message on Langer's voicemail, which stated "I didn't forget you."  (Langer's Mot. for Contempt, Ex. A.)  Peoples admitted during the Contempt Hearing that he left this telephone message, but denied that it was threatening.  (May 3, 2007 Hr'g Tr. 46.)  When questioned why he left the message, Peoples responded "it's just almost every night I think about this case[8] and I just bubble over with anger and it's – you can't make it go away."  (May 3, 2007 Hr'g Tr. 47.)

Langer immediately informed the Court of the incident by letter dated June 29, 2006.  On July 5, 2006, Langer filed his Motion for Contempt.  In Langer's Proposed Findings of Fact and Conclusions of Law, Langer asked the Court for the following relief:

(A) An Order holding Mr. Peoples in Contempt;

(B) A prospective coercive civil contempt remedy, of a prospective amount to be paid into Court should Mr. Peoples again violate the current Orders, in an amount set by the court as reasonable under the circumstances to ensure compliance with the existing Orders; and

(C) Permanent injunctive relief both under the settlement agreement and court orders.

(Langer's Proposed Findings of Fact and Conclusions of Law ¶ 12.)

On October 22, 2006, Peoples filed a Motion to Dismiss Any Reference To a TRO Which Was Entered Improperly After the Case was Dismissed With Prejudice ("First Motion to Dismiss").  The motion was improperly filed in <u>Peoples v. Langer</u>, Civil Action No. 04-2785, which had been dismissed with prejudice on November 16, 2004 after Peoples and Langer settled their fee dispute.  In contrast, Langer's Motion for Contempt was correctly filed in <u>In re Linerboard Antitrust Litig.</u>, MDL No. 1261, as both the Emergency TRO and Consent

---

[8] Peoples was referring to the settlement of the class-action component of MDL 1261 and to the settlement of <u>Peoples v. Langer</u>, Civil Action No. 04-2785.  <u>See</u> <u>id.</u>

Stipulation Order pertained to the class action component of MDL No. 1261 (and were correctly captioned "MDL No. 1261").

On February 13, 2007, Peoples filed a Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure Rule [*sic*] 12(b)(1) ("Second Motion to Dismiss"). Despite the Court having informed Peoples' attorney on numerous occasions that the contempt matter pertained to <u>In re Linerboard Antitrust Litig.</u>, MDL No. 1261, rather than <u>Peoples v. Langer</u>, Civil Action No. 04-2785, Peoples' attorney again filed the motion in <u>Peoples v. Langer</u>, Civil Action No. 04-2785.

### G.      The Contempt Hearing

After several unsuccessful attempts by the parties to resolve the issues presented by the Motion for Contempt,[9] the Court conducted contempt hearings on March 16, 2007, May 3, 2007, and May 4, 2007.

Peoples and his attorney, Frank Marcone ("Marcone"), frequently attempted to inject into the contempt hearing the issue of Peoples' contribution to the class action component of MDL No. 1261. (See, e.g., May 3, 2007 Hr'g Tr. 16-20.) The Court permitted limited testimony on this issue because, according to Marcone, Peoples' testimony on this topic was relevant to "mitigation." In actuality, it was an improper and ill-conceived attempt to raise long-resolved issues regarding a proper fee allocation to Peoples for his contribution to the case. That is, Peoples and Marcone attempted to use the Contempt Hearing as a vehicle to reopen <u>Peoples v.</u>

---

[9] Langer's attorney repeatedly conveyed to the Court and to Marcone that "this case could be resolved by a consent order which simply provided that there would be no more violations of the injunctions, no more telephone calls, no more contact in keeping with the injunctions and it also provided for a coercive penalty in the even of a future violation." May 4, 2007 Tr. at 109.

13

Langer, Civil Action No. 04-2785.[10] (See. e.g., May 3, 2007 Hr'g Tr. 44, 48, stating "I want to open the other" case).

During the contempt hearing, Peoples also testified about an improper relationship between Langer and the Court.  He explained that Langer and other individuals led him to believe that Langer had an improper relationship with the Court in order to persuade him to settle his fee dispute.  The other individuals to whom Peoples referred during his testimony, Eugene Spector, Esquire, and Howard Sedran, Esquire, testified that they made no representation to Peoples that Langer had an improper relationship with the Court.  (May 4, 2007 Hr'g Tr. 13-57.) Langer also testified to this effect.  (May 4, 2007 Hr'g Tr. 59-129.)

### H.    Peoples' Actions Towards Langer After June 29, 2006

Peoples has not left another telephone message on Langer's voicemail since June 29, 2006.  Initially, Peoples stated that, he was "going to try" not to violate the Stipulated Order, but "it's still very difficult because of the hatred that I have for [Langer], it's very difficult."  May 3, 2007 Tr. at 50.  Later, Peoples stated more definitively that he would not violate the Stipulated Order in the future.  Id. at 51.

## III.    JURISDICTION

In both of Peoples' motions to dismiss, Peoples argues that he cannot be held in contempt because this Court lacks jurisdiction.  Peoples' First Motion to Dismiss argues that the Court lacks jurisdiction because the Court dismissed Peoples v. Langer, Civil Action No. 04-2785, with prejudice.  Peoples' Second Motion to Dismiss primarily argues that the contempt issues currently before the Court bear no relationship to In re Linerboard Antitrust Litig., MDL No.

---

[10] Marcone also improperly attempted to reopen Peoples v. Langer, Civil Action No. 04-2785, in his submissions to the Court.  See, e.g., Peoples' Proposed Findings of Fact and Conclusions of Law.

1261.  The Court rejects these arguments.

In sum, the fact that the Court dismissed Peoples v. Langer, Civil Action No. 04-2785,
with prejudice has no bearing on whether the Court has jurisdiction over this dispute, which
pertains only to In re Linerboard Antitrust Litig., MDL No. 1261.  The Court has jurisdiction
over this dispute pursuant to its jurisdiction over matters relating to the award and allocation of
counsel fees in the class action component of MDL No. 1261.[11]   However, this jurisdiction will
end upon the termination of the class action phase of MDL No. 1261, as a result of which judicial
intervention will no longer be necessary to effectuate and prevent the frustration of its orders in
the case.  The class action component of MDL No. 1261 will be terminated upon receipt of a
supplement to the Final Report of the Claims Administrator.

The Court first addresses its jurisdiction to enjoin actions in other forums pertaining to
the fee allocation in MDL No. 1261, and then addresses its jurisdiction to issue the Emergency
TRO, the Consent Stipulation Order, and the All Writs Act Injunction.

### A.   Jurisdiction to Enjoin Actions in Other Forums

#### 1.   Overview

On July 6, 2004, this Court entered the All Writs Act Injunction, enjoining Peoples from
"taking any further action *relating to the allocation of fees in MDL 1261 or the action of liaison
counsel in connection therewith* in any court or forum other than the United States District Court
. . . ."  Order of July 6, 2004 (emphasis added).  The All Writs Injunction stated that the
injunction was "necessary to preserve the Court's jurisdiction over all matters relating to the

---

[11] For that reason, the Court issued the Emergency TRO and Consent Stipulation Order in
In re Linerboard Antitrust Litig., MDL No. 1261, not in Peoples v. Langer, No. 04-2785.  The
Emergency TRO and Consent Stipulation Order were both correctly captioned "MDL No. 1261."
Langer correctly filed the Motion for Contempt in In re Linerboard Antitrust Litig., MDL No.
1261, not under Peoples v. Langer, No. 04-2785.

award and allocation of counsel fees in MDL 1261." Order of July 6, 2004.  In contrast, the

Court *did not* enjoin <u>Peoples v. Langer</u>, Civil Action No. 04-2785, which was properly removed

to this Court on June 24, 2004, prior to the issuance of the All Writs Injunction.  Moreover, the

propriety of the removal of <u>Peoples v. Langer</u>, No. 04-2785, is irrelevant to the instant contempt

matter, which pertains only to MDL No. 1261.[12]  The Court concludes that it had jurisdiction to

issue the All Writs Act Injunction to protect and effectuate its Order of June 2, 2004 addressing

allocation of attorney's fees.

### 2.        Legal Standard

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of

Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law."  28 U.S.C. § 1651.  "The authority the All Writs

Act imparts to district courts is limited, however, by the Anti-Injunction Act, which prohibits

injunctions 'to stay proceedings in a State court except as expressly authorized by Act of

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'"

<u>In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litig.</u>, 369 F.

---

[12]   In a letter to the Court dated May 18, 2007, Peoples argues that, under <u>Syngenta Crop Protection, Inc. v. Henson</u>, 537 U.S. 28 (2002), this Court lacked jurisdiction to enter the All Writs Act.  In <u>Sygenta</u>, the Supreme Court held that the All Writs Act does not give federal courts the authority to remove a state-court case to prevent frustration of orders that the Court had previously issued; removal is proper only if federal court independently would have had original subject matter jurisdiction. <u>Id.</u> at 31-32.  The Court's rational for this conclusion was that the general removal statute, 28 U.S.C. § 1441, "requires that a federal court have original jurisdiction over an action in order for it to be removed from a state court." <u>Id.</u> at 34.

The <u>Syngenta</u> case is inapposite to this case.  First, <u>Peoples v. Langer</u>, No. 04-2785, which Peoples argues was improperly removed under the All Writs Act, was *not removed* pursuant to the Court's All Writs Act Injunction.   Indeed, the Court issued the All Writs Injunction *after* the case had been removed.  Second, the instant contempt issues pertain only to MDL No. 1261, and not to <u>Peoples v. Langer</u>, Civil Action No. 04-2785.  Thus, it is irrelevant whether the Peoples case was improperly removed.

3d 293, 305 (3d Cir. 2004) (citing 28 U.S.C. § 2283).

"The settled law . . . establishes that the 'aid of jurisdiction' exception . . . includes consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." In re Prudential Ins. Co. of America Sales Practices Litig., 2007 WL 1258618, *4 (3d Cir. May 1, 2007) (citations omitted). The All Writs Act "is generally used to prohibit activities in another court that threaten to undermine a pending settlement in the enjoining court." Grider v. Keystone Health Plan Cent., Inc. 500 F.3d 322, 330 (3rd Cir. 2007). As the Third Circuit explained in In re Diet Drugs, 282 F.3d 220, 236 (3d Cir. 2002),

> Complex cases in the later stages--where, for instance, settlement negotiations are underway--embody an enormous amount of time and expenditure of resources.   It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding. These cases are especially vulnerable to parallel state actions that may frustrate the district court's efforts to craft a settlement in the multi-district litigation before it, thereby destroying the ability to achieve the benefits of consolidation. *In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.*[13]

---

[13] In contrast, in In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 134 F.3d 133, 144 -145 (3d Cir. 1998), the Third Circuit ruled that the District Court did not have jurisdiction to enjoin a parallel state court action. The Third Circuit emphasized that the District Court in In re General Motors had not yet approved or conditionally approved a settlement.

> First, we note that the "necessary in aid of its jurisdiction" exception applies only to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. No such interference or impairment appears in this record. *Indeed, in those cases cited by appellants where a state action has been enjoined, the federal court had already approved or conditionally approved its own settlement or the approval was imminent. That is not the case here.* The MDL court is not considering a nationwide settlement pursuant to our remand in *GM I.* Moreover, the Louisiana settlement contained opt out provisions, thereby protecting the rights of the 277 remaining MDL plaintiffs.

17

Id. (quotation and citation omitted, emphasis added); see also In re Am. Honda Motor Co., Inc.,

Dealerships Relations Litig., 315 F.3d 417, 438 (4th Cir. 2003).   Recently, the Third Circuit

reemphasized that, "it may not be sufficient that state actions risk some measure of

inconvenience or duplicative litigation" and that "an injunction under the All Writs Act is

appropriate only when "the state court action threatens to frustrate proceedings and disrupt the

orderly resolution of the federal litigation." Grider, 2007 WL 2416772, at *7 (quotations

omitted).

### 3.    Analysis

Under In re Diet Drugs, this Court had jurisdiction to enter the July 6, 2004 All Writs

Injunction.  When Peoples filed his lawsuit, the Court had already approved the settlement and

awarded "a counsel fee of 30 percent of the total settlements of $202,572,489 ("Settlement

Fund") [in the class action component of MDL No. 1261] to all counsel *with allocations to*

*specific firms to be made by liaison counsel, Howard Langer, Esquire . . . .*"  Order of June 2,

2004 (emphasis added); see also In re Linerboard Antitrust Litig., 2004 WL 1221350, *2 (E.D.

Pa. June 2, 2004).

By Order dated June 4, 2004, the Court amended the Order of June 2, 2004 to include,

*inter alia*, the following language: "the Court RETAINS jurisdiction over this case including

jurisdiction over the Settlement Fund and its distribution, as well as all issues relating to the fees

and costs of counsel in this action."  In re Linerboard Antitrust Litig., 2004 WL 1240775, *1

(E.D. Pa. June 4, 2004).  The Court has on several other occasions explicitly retained jurisdiction

---

Id. (citations and quotations omitted, emphasis added).  In this case, unlike in In re General
Motors, the Court had already approved settlement of the class-action component of MDL No.
1261 when it issue the All Writs Act Injunction.  Moreover, the All Writs Act Injunction was
limited to litigation "relating to the allocation of fees in MDL 1261."

over matters related to the distribution of the Settlement Fund.  See, e.g., In re Linerboard

Antitrust Litig., 333 F. Supp. 2d 343, 344 (E.D. Pa. 2004) ("The Court retains continuing

jurisdiction over this matter including jurisdiction over the Settlement Fund and its distribution,

the Funds to be distributed pursuant to this Order, as well as all issues relating to the fees and

costs of counsel in this action.").

       In implementing this Court's Orders of June 2 and 4, 2004, Langer allocated two million

dollars to John F. Peoples, Esq. for his contribution to the case.  Peoples was dissatisfied with

that amount.  As Peoples explained during the Contempt Hearing, "I . . . wanted ten percent of

the box committee's fee . . . I should have gotten $4.7 million."  (May 3, 2007 Hr'g Tr. 61.)

       On June 23, 2004, Peoples filed a complaint in the Court of Common Pleas of

Philadelphia County seeking four million dollars in attorney's fees from the settlement of the box

class action component of MDL 1261, as well as punitive damages and attorney's fees.

Peoples's Compl. ¶ 49.  He also asked the state court to order Langer "to, first, escrow $6 million

[approximately ten (10) percent of the total fee award] pending the final outcome of the litigation

and . . . upon such final outcome of the litigation, to pay over to Plaintiff said $6 million . . . ."

Peoples' Compl. ¶ 67.  At the very time Langer was implementing the Court's order of June 2,

2004, and allocating the court-awarded counsel fee among the more than 200 lawyers who

participated in the MDL, Peoples asked the state court to escrow $6 million (approximately ten

percent) of that fund.

       A reading of Peoples's filings in this case would leave one with the impression that his

fee dispute with Langer affected only Langer, and had nothing to do with the fee awarded by the

Court in the Linerboard Antitrust Litigation, MDL 1261, and the attorneys to whom Langer

allocated portions of the fee.  This is incorrect.  Peoples' suit against Langer directly implicated

the res in the MDL - the attorneys fee awarded by the Court.

Accordingly, the Court enjoined Peoples from "taking any further action relating to the allocation of fees in MDL 1261 or the action of liaison counsel in connection therewith in any court or forum other than the United States District Court . . . ."   Order of July 6, 2004 (emphasis added).  The All Writs Act Injunction was necessary to effectuate its Order of June 2, 2004 addressing allocation of attorney's fees and to prevent disruption of "the orderly resolution of the federal litigation."  Grider, 2007 WL 2416772, at *7.

The Court notes that in In re Synthroid Mktg. Litig., No. 97-6017 (N.D. Ill. Aug. 22, 2003), the United States District Court for the Northern District of Illinois issued a substantively identical All Writs Act Injunction, granting "counsels' motions to enjoin litigation filed in violation of this court's final order and judgment . . . ."  That court stated as follows

> Any issue *with respect to the division of fees* is necessarily within the jurisdiction of this court and must be resolved in this forum.  Chander Loupe, Greg Murphy and Charles Graddick are therefore *enjoined from further pursuing ligation with respect to fees awarded in this case* in Alabama state court or any other court other than this court.  This injunction is necessary to preserve the exclusive jurisdiction of this court to resolve fee issues involving this litigation and is granted under authority of the All Writs Act . . . .

Id. (emphasis added).

To the extent that Peoples argues that the Court did not have jurisdiction to issue the All Writs Injunction because Peoples was not a litigant or counsel in MDL No. 1261, the argument is rejected.  As the Third Circuit explained in Commonwealth of Pennsylvania v. Porter, 659 F.2d 306 (3d Cir. 1981),

> The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action . . . , are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.  This Circuit recently stated that 'the basis of injunctive relief under the All Writs Act against a third party is not culpability, but practical necessity.'

Id. at 325 (quoting Pittsburgh-Des Moines Steel Co. v. United Steelworkers, 633 F.2d 302, 307 (1980) (brackets omitted)).

As the Second Circuit more recently explained, the All Writs "Act's grant of authority is plainly broad and, on its face, makes no distinction between parties and nonparties." United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 266 F.3d 45, 50 (2d Cir. 2001). "A district court may issue such a writ against any person with the 'minimum contacts' with the forum necessary to the court's exercise of personal jurisdiction." Id. Additionally, in the context of an MDL litigation, the majority in In re American Honda Motor was not swayed by the fact that the enjoined individual "did not participate in the MDL proceedings as either a litigant or as counsel . . . ." 315 F.3d at 443.

For all of the foregoing reasons, the Court concludes that it had jurisdiction to issue the July 6, 2004 All Writs Act Injunction.

**B.     Jurisdiction to Enter the Emergency TRO and the Consent Stipulation Order**

Under the All Writs Act, the Court also had jurisdiction to enter the Emergency TRO and the Consent Stipulation Order.

**1.     Legal Standard**

The All Writs Act authorizes "a federal court 'to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" Pennsylvania Bureau of Correction v. United States Marshals Serv., 474 U.S. 34, 40 (1985), aff'g Garland v. Sullivan, 737 F.2d 1283, 1286 (3d Cir. 1984). "[T]he Anti-Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings."

21

In re Diet Drugs, 282 F.3d 220, 235 (3d Cir. 2002) (parenthetically quoting Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998)).

"It is well recognized that federal courts have the power under the All Writs Act . . . to enjoin litigants who are abusing the court system and harassing their opponents." Simcox v. McDermott Int'l, Inc., 152 F.R.D. 689, 700 (S.D. Tex.1994); see also In re Stabile, 436 F. Supp. 2d 406, 413 (E.D.N.Y. 2006) (noting the "All Writs Act is the proper basis and appropriate remedy to address complaints of harassment").

## 2.     Analysis

After the settlement of the class-action component of MDL No. 1261, the Court expressly "retained jurisdiction over this case including jurisdiction over the Settlement Fund and its distribution, as well as all issues relating to the fees and costs of counsel in this action."  Order dated June 4, 2004.  This followed the Court's order of June 2, 2004, in which the Court awarded "a counsel fee of 30 percent of the total settlements of $202,572,489 ("Settlement Fund") to all counsel with allocations to specific firms to be made by liaison counsel, Howard Langer, Esquire . . . ."  Order of June 2, 2004; see also In re Linerboard Antitrust Litig., 2004 WL 1221350, *2 (E.D. Pa. June 2, 2004).

From July 17, 2004 through March 17, 2005, Peoples left a series of ten threatening telephone messages on Langer's voicemail.  As Peoples admits, he made the calls to Langer because he was angry about the share of the attorney's fees that Langer allocated to him.  See Peoples, May 3, 2007 Tr. at 43-44.

To effectuate and prevent the frustration of its June 2, 2004 Order awarding counsel fees in the class action component of MDL No. 1261, the Court issued two agreed-upon Orders - the Emergency TRO and the Consent Stipulation Order - both of which enjoined Peoples from, *inter*

22

*alia*, making threatening phone calls to Langer.  (See Section II.D of this Memorandum.)  The purpose of the orders was to prevent Peoples from interfering with Langer's fee allocations in MDL No. 1261 in any way.

Accordingly, the Court concludes that, under the All Writs Act, it had jurisdiction to enter the Emergency TRO and the Consent Stipulation Order.

### C.    Jurisdiction Over Peoples v. Langer, Civil Action No. 04-2785

Although not directly involved in the motions presently pending, Peoples has, in the past challenged the Court's jurisdiction over his underlying lawsuit in state court, removed to federal court and docketed as Civil Action No. 04-2785.  That issue was squarely presented to the Court of Appeals in Peoples's Petition for Writ of Mandamus filed August 30, 2007.  In that Petition, Peoples sought an order declaring that this Court had no jurisdiction over the underlying fee dispute between Peoples and Langer, and vacating all prior orders issued in that case.

In its Answer to that Petition, this Court detailed the law applicable to jurisdiction over the case.  In sum, this Court concluded that it had supplemental or ancillary jurisdiction over the Peoples fee dispute based on the well established principle that federal courts may assert "ancillary" or "supplemental" jurisdiction for "two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 380 (1994).

The Petition for Writ of Mandamus was denied by Order of the Court of Appeals dated October 16, 2007.  A Petition for Rehearing Before the Court En Banc was thereafter denied by Order dated February 12, 2008.  Although no opinions were written by the Court of Appeals,

those rulings, in essence, affirmed this Court's determination that it had jurisdiction over the Peoples fee dispute, Civil Action No. 04-2785.

## IV.    STANDARD OF REVIEW - CONTEMPT MOTION

"To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." United States For Use and Benefit of Salvino Steel & Iron Works, Inc. v. Safeco Ins. Co. of Am., 181 Fed. App'x 247, 250-251 (3d Cir. 2006) (citing John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003)).

"The plaintiff has a heavy burden to show a defendant guilty of civil contempt.  It must be done by 'clear and convincing evidence,' and where there is ground to doubt the wrongfulness of the conduct, he should not be adjudged in contempt." Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994) (citing Quinter v. Volkswagen of America, 676 F.2d 969, 974 (3d Cir. 1982)).

The Third Circuit has enunciated that "willfulness is not a necessary element of civil contempt and, accordingly, that evidence regarding good faith does not bar the conclusion that the defendant acted in contempt." Int'l Mktg., Inc. v. Counteract Balancing Beads, Inc., 48 Fed. App'x 372, 375 (3d. Cir. 2002).   On the other hand, willfulness is "relevant to the contempt proceeding . . . insofar as it pertain[s] to the extent of the sanction to be imposed." Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148-149 (3d Cir. 1994) (citing TWM Mfg. Co. v. Dura Corp., 722 F.2d 1261, 1273 (6th Cir. 1983)).

"[T]he touchstone of civil contempt is that it be coercive or compensatory." Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc., 110 Fed. App'x 283, 289 (3d Cir. Oct. 5, 2004).  "A district court has 'wide discretion in fashioning a remedy' for civil contempt." Int'l Mktg., 48 Fed. App'x at 374 (3d Cir. 2002) (citing Council for Clean Air v.

Pennsylvania, 678 F.2d 470, 478 (3d Cir. 1982)).  "[P]enalties for civil contempt are limited to

measures that may be appropriate to compel compliance with the underlying order and to

compensate the opposing party for losses sustained as a result of the noncompliance."

Wedgewood Village Pharmacy, Inc. v. United States, 421 F.3d 263, 268 (3d Cir. 2005) (citing

United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947)).

## V.    DISCUSSION - CONTEMPT MOTION

### A.    Contempt

Langer alleges that Peoples is in contempt of: (1) the Emergency TRO dated March 22,

2005 and the Consent Stipulation Order dated September 8, 2005; and (2) the All Writs Act

Injunction.  The Court addresses each contempt claim in turn.

### 1.    The Emergency TRO and Consent Stipulation Order

Langer argues that Peoples violated this Courts' March 22, 2005 Emergency TRO and

September 8, 2005 Consent Stipulation Order by leaving a telephone message on Langer's

voicemail on June 29, 2006.  The Court: (1) concludes that the Emergency TRO and the Consent

Stipulation Order are valid orders; (2) finds that Peoples had knowledge of the Emergency TRO

and the Consent Stipulation Order; and (3) finds that Peoples disobeyed the Emergency TRO and

the Consent Stipulation Order.

### a.    Validity of Emergency TRO and the Consent Stipulation Order

Peoples argues that the March 22, 2005 Emergency TRO and the September 8, 2005

Consent Stipulation Order are invalid because: (1) the Court lacked jurisdiction to issue the

orders; and (2) the orders violate his rights under the First Amendment of the United States

Constitution.  The Court rejects these arguments and concludes that the Emergency TRO and

Consent Stipulation Order are valid.

First, the Court has already discussed at length the basis for its jurisdiction to issue the Emergency TRO and the Consent Stipulation Order.  Accordingly, the Court rejects Peoples' argument that the Emergency TRO and Consent Stipulation Order are invalid because the Court lacked jurisdiction.

Second, neither the Emergency TRO nor the Consent Stipulation Order violate Peoples' rights under the First Amendment.  The Consent Stipulation Order incorporated the terms of the Emergency TRO, which enjoined Peoples "from making any defamatory statements regarding Howard Langer, and from under taking any other action of any kind, directly or indirectly, having the intended or the necessary effect of harming Howard Langer or his family in any fashion." (Mar. 22, 2005 TRO at 1.)  Peoples *agreed* not to make defamatory statements as part of the Consent Stipulation Order in order to resolve the issues (Peoples' phone threats) underlying the Court's Emergency TRO.  Additionally, Langer's Motion for Contempt does not assert that Peoples violated the provisions of the Emergency TRO and Consent Stipulation Order pertaining to defamation, but rather that Peoples left a threatening message on his voicemail that continued a pattern of harassment by Peoples.

Moreover, "[a] person who makes a private determination that an order is incorrect, or even unconstitutional, may [be found in] contempt for violation of the order even if his or her private determination is later proven correct in the courts." Loftus v. Southeastern Pennsylvania Transp. Authority, 8 F. Supp. 2d 464, 467 n.4 (E.D. Pa. 1998) (citing United States v. Stine, 646 F.2d 839, 845 (3d Cir. 1980); Walker v. City of Birmingham, 388 U.S. 307, 317-18 (1967)).  "A party seeking to challenge the validity of an injunction must seek judicial review, rather than simply disobeying it." Georgine v. Amchem Products, Inc., 1995 WL 422792, *12 (E.D. Pa.

July 12, 1995) (citing <u>Walker</u>, 388 U.S. at 317-18).[14]

Accordingly, the Court concludes that the March 22, 2005 Emergency TRO and the September 8, 2005 Consent Stipulation Order are valid orders.

### b.   Knowledge of the Emergency TRO and the Consent Stipulation Order

Peoples' former counsel, George Bochetto, signed the September 8, 2005 Consent Stipulation Order.  The Consent Stipulation Order states that Bochetto represented to the Court that Peoples had "discussed this form of Order with him and that John F. Peoples consents to the issuance of this Order . . . ."  Additionally, Peoples testified at the Contempt Hearing that he was aware of the Consent Stipulation Order and that the injunction incorporated the terms of the March 22, 2005 Emergency TRO.  (May 3, 2007 Hr'g Tr. 54.)  Specifically, he was aware that the Emergency TRO and the Consent Stipulation Order prohibited him from having any contact with Langer.  <u>Id.</u>

Accordingly, the Court concludes that Peoples had knowledge of the March 22, 2005 Emergency TRO and the September 8, 2005 Consent Stipulation Order.

### c.   Violation of the Emergency TRO and the Consent Stipulation Order

The September 8, 2005 Consent Stipulation Order incorporated the following language of the March 22, 2005 Emergency TRO: "John F. Peoples is HEREBY ENJOINED from having

---

[14] In  <u>Roe v. Operation Rescue</u>, 919 F.2d 857, 871 (3d Cir. 1990), the Third Circuit addressed this issue in the context of an injunction that implicated the First Amendment:

> To begin with, McMonagle's right to free speech does not immunize him from liability for engaging in proscribed conduct. Insofar as McMonagle asserts that the TRO was an unreasonable time, place and manner restriction on his speech, the validity of the order may not be collaterally challenged in a contempt proceeding for violating the order.

Id. (citing <u>Stine</u>, 646 F.2d at 845); <u>see also</u> <u>Northeast Women's Center, Inc. v. McMonagle</u>, 939 F.2d 57, 68 (3d Cir. 1991).

any contact or other communication, or leaving any messages for Liaison counsel, Howard Langer."

On June 29, 2006, Peoples left another telephone message on Langer's voicemail, which stated "I didn't forget you." (Langer's Mot. for Contempt, Ex. A.) Peoples admitted during the Contempt Hearing that he left this telephone message. (May 3, 2007 Hr'g Tr. 46.) When questioned why he left the message, Peoples responded "it's just almost every night I think about this case and I just bubble over with anger and it's – you can't make it go away." (May 3, 2007 Hr'g Tr. 47.)

Accordingly, the Court concludes that Peoples violated the agreed-upon September 8, 2005 Consent Stipulation Order and the agreed-upon March 22, 2005 Emergency TRO.

### 2.       The All Writs Injunction

Langer argues that Peoples violated this Court's July 6, 2004 All Writs Injunction by writing an unsubstantiated letter to the Disciplinary Board of the Supreme Court of Pennsylvania. (Mot. for Protective Order 1.) The Court: (1) concludes that the All Writs Act Injunction is valid; (2) finds that Peoples had knowledge of the All Writs Injunction; and (3) finds that Peoples disobeyed the All Writs Injunction.

### a.       Validity of the All Writs Act Injunction

Peoples argues that the All Writs Act Injunction is invalid because the Court lacked jurisdiction to issue the order. Additionally, Peoples' counsel took the position at the Contempt Hearing that the All Writs Act Injunction was invalid because the Court did not have the power to enjoin an attorney from fulfilling an obligation under the Pennsylvania Rules of Professional Conduct. The Court rejects these arguments and concludes that the All Writs Act Injunction is a valid order.

First, the Court has already discussed at length the basis for its jurisdiction to issue the All Writs Act Injunction. Accordingly, the Court rejects Peoples' argument that the All Writs Act Injunction is invalid because the Court lacked jurisdiction to issue it.

Second, the All Writs Act Injunction did not prevent Peoples from fulfilling any obligation under the Pennsylvania Rules of Professional Conduct. As background, the All Writs Act Injunction enjoined "John F. Peoples, Esquire . . . from taking any further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in any court or forum other than the United States District Court for the Eastern District of Pennsylvania." Peoples conceded during the Contempt Hearing that the All Writs Act Injunction enjoined him from writing to the Disciplinary Board. (May 3, 2007 Hr'g Tr. 28.)

Peoples argues that his letter to the Disciplinary Board dated October 19, 2005 was submitted pursuant to Rule 8.3(a) of the Pennsylvania Rules of Professional Conduct. That rule provides that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority." However, Comment 4 to Rule 8.3 provides as follows:

> While a lawyer may report professional misconduct at any time, the lawyer must report misconduct *upon acquiring actual knowledge of said misconduct. The discretionary reporting of misconduct should not be undertaken for purposes of tactical advantage over another lawyer, to punish or inconvenience another for a personal or professional slight, or to harass another lawyer.*

Id. (emphasis added).

The purpose of enjoining Peoples from writing to the Disciplinary Board was to prevent precisely the behavior referred to in Comment 4 to Rule 8.3: to prevent discretionary reporting taken for tactical purposes and to harass another lawyer. On this issue, the Court notes that, if

29

Peoples actually had knowledge of a violation of the Rules of Professional Conduct, he could have referred this behavior to this Court or requested leave to submit a letter to the Disciplinary Board, and he did neither.

Moreover, as previously explained, a "party seeking to challenge the validity of an injunction must seek judicial review, rather than simply disobeying it." Georgine, 1995 WL 422792, at *12.

### b.       Knowledge of the All Writs Act Injunction

Peoples conceded several times during the Contempt Hearing that he knew of the All Writs Act Injunction of July 6, 2004, and more specifically, knew that the order enjoined him from writing to the Disciplinary Board.  (See May 3, 2007 Hr'g Tr. 28, stating "we couldn't write the Disciplinary Board"; see also May 3, 2007 Hr'g Tr. 99, 106-07.)  The record also establishes that he learned of the All Writs Act Injunction some time prior to September or October of 2004. (May 3, 2007 Hr'g Tr. 28.)  However, Peoples testified that he thought the order was mooted by the dismissal of his suit against Langer on November 16, 2004.  (May 3, 2007 Hr'g Tr. at 107.) Peoples was wrong.  The order was not mooted, nor was there reason for Peoples to believe that the order was mooted.  Thus, the Court concludes that Peoples had knowledge of the July 6, 2004 All Writs Act.

### c.       Violation of the All Writs Act Injunction

In a letter to the Disciplinary Board dated October 19, 2005, Peoples "lodge[d] a formal complaint against Howard Langer, Esquire . . . in connection with his refusal to honor his contractual responsibility to pay [him] a co-counsel fee of approximately $4.7 million dollars . . . ."  Sending this letter constituted a " further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in . . .[a] forum other than

30

the United States District Court for the Eastern District of Pennsylvania." (See Order of July 6, 2004, All Writs Act Injunction.)  Moreover, the Court finds that Peoples's letter to the Disciplinary Board was written  "for purposes of tactical advantage over another lawyer . . . or to harass another lawyer."  Comment 4, Rule 8.3, Pennsylvania Rules of Professional Conduct. Accordingly, the Court concludes that Peoples disobeyed the All Writs Act Injunction, and that his letter to the Disciplinary Board dated October 19, 2005, was not a proper submission under Rule 8.3(a) of the Pennsylvania Rules of Professional Conduct.

### B.    Contempt Remedy

Peoples suffers from severe physical afflictions.  As Peoples explained during the Contempt Hearing, "I'm essentially blind.  I have maybe a half a percent to a one-percent vision . . . .  I have little tunnels out of which to see, that makes it even worse.  My eyes move back and forth, and it's been damaged further because of the diabetes."  (May 3, 2007 Hr'g Tr. 13.)  Peoples has "very bad diabetes and blood pressure and" does not "walk very well anymore." (May 3, 2007 Hr'g Tr. 15.)  He has "contracted [pneumonia] probably 30 or 35 times in the last five years . . . ."  (May 3, 2007 Hr'g Tr. 16.)  Additionally, Peoples has had "two or three strokes . . . ."  (May 3, 2007 Hr'g Tr. at 15.)

On June 29, 2006, when Peoples left the telephone message at issue on Langer's voicemail, he was taking four prescriptions for his blood pressure to prevent him from suffering another stroke.  (May 3, 2007 Hr'g Tr. at 15.)  Peoples testified that he made the telephone call from the "prostate doctor's office.  I was having a lot of trouble with my prostate. . . . I was taking the prostate medication, but it had gotten infected . . . ."  (May 3, 2007 Hr'g Tr. 47.) According to Peoples, he was in great pain when he made the call.  (May 3, 2007 Hr'g Tr. 47.) Moreover, at that time, Peoples was also suffering from severe depression, for which he also took

31

medication.  (May 3, 2007 Hr'g Tr. at 45.)

Peoples began receiving treatment from a psychiatrist after the telephone call on July 29, 2006.  He has not left another telephone message on Langer's voicemail since June 29, 2006, and has had no further contact with Langer.  At the Contempt Hearing, Peoples initially stated that, he was "going to try" not to violate the Stipulated Order, but "it's still very difficult because of the hatred that I have for [Langer], it's very difficult."  (May 3, 2007 Hr'g Tr. 50.)  Later, however, Peoples stated more definitively that he would not violate the Stipulated Order in the future.  (May 3, 2007 Hr'g Tr. 51.)

Furthermore, the Court's jurisdiction over this dispute will end upon termination of the class action component of MDL No. 1261 by order and memorandum to be issued upon receipt of a supplement to the Final Report of the Claims Administrator.  Thus, a prospective fine would be unenforceable by this Court.  On this issue, the Court notes that it has already ruled orally that it would not "impose a penalty for [Peoples] having done what he did," and would only consider imposing "a coercive penalty for a future violation."  (May 4, 2007 Hr'g Tr. 111.)

After considering the circumstances and consequences of Peoples' actions, the Court declines to impose any contempt sanctions on Peoples.  Because the Emergency TRO and Consent Stipulation Order were not docketed at Peoples' request, these orders will be docketed with the filing of this Memorandum and Order.  In view of the fact that there have been no violations of those Orders in more than two years, and considering the fact that the Court's jurisdiction over this dispute will end upon receipt of a supplement to the Final Report of the Claims Administrator in MDL No. 1261, the Emergency TRO, the Consent Stipulation Order, and the All Writs Act Injunction will now be vacated.

## VI.   IMPOSITION OF DISCIPLINARY SANCTIONS AND REFERRAL TO THE CHIEF JUDGE FOR AN ORDER TO SHOW CAUSE WHY PEOPLES SHOULD NOT BE SUSPENDED FROM THE PRACTICE OF LAW

Langer alleges that Peoples' allegedly threatening telephone messages, his letter to the Disciplinary Board, and his testimony during the Contempt Hearing each mandate imposition of disciplinary sanctions and referral to Chief Judge Bartle for an order to show cause why Peoples should not be suspended from the practice of law. The Court concludes that such action is not required or necessary on the present state of the record.

### 1.   Telephone Messages

Langer argues that Peoples' string of telephone messages warrants disciplinary sanctions and referral to Chief Judge Bartle.

The Court has already determined that the telephone messages on Langer's voicemail were largely a consequence of Peoples' severe mental and physical afflictions, and that Peoples has sought psychiatric help since the June 29, 2006 telephone message that gave rise to the instant dispute. Accordingly, the Court declines to impose disciplinary sanctions for those telephone messages or refer Peoples to Chief Judge Bartle on this ground.

### 2.   Letter to the Disciplinary Board

Langer argues that disciplinary sanctions and referral to Chief Judge Bartle are appropriate because, in Peoples' October 19, 2005 letter to the Disciplinary Board, Peoples defamed him and attacked the credibility of this Court.

The Disciplinary Board is aware of the Peoples' letter, and there is no evidence that it has taken any action against either Langer or Peoples. On this issue, the Court will defer to the judgment of the Disciplinary Board. Accordingly, the Court declines to impose disciplinary sanctions or refer Peoples to Chief Judge Bartle on this ground.

### 3.      Statements Made During the Contempt Hearing

Langer also argues that disciplinary sanctions and referral to Chief Judge Bartle are appropriate because, during the Contempt Hearing, Peoples falsely "testified to serious judicial improprieties" by this Court.  (Lead Counsel's Memo on Potential Disciplinary Violations at 3.)  Without considering the merits of this claim, the Court rejects this argument on the present state of the record.

According to Marcone, Peoples' attorney, Peoples cannot be held accountable for his testimony because, among other puzzling reasons, "absolute immunitey [sic] for waitresses [sic] is standardized by the United States Supreme Court, with applying ancient precedent with logic, public policy as well as history."  (Peoples' Mem. of Law Addressing [Potential Disciplinary Sanctions] at 13.)  The Court rejects the argument that Peoples cannot be held accountable for his testimony.

Peoples also argues that he did not testify that the Court engaged in improprieties, but rather that Langer and others led Peoples to believe that Langer had an improper relationship with the Court in order to persuade him to settle his fee dispute.[15]  (Peoples' Mem. of Law Addressing [Potential Disciplinary Sanctions] at 3, 12, citing May 4, 2007 Hr'g Tr. 12.)  This dispute is part of a drawn-out personal quarrel between Langer and Peoples that warrants no further imposition upon the judicial system.  Without addressing the merits of the charges based

---

[15] The Court notes that the other individuals to whom Peoples referred during his testimony on this issue, Eugene Spector, Esquire, and Howard Sedran, Esquire, testified that they made no representation to Peoples that Langer had an improper relationship with the Court.  See generally May 4, 2007 Tr. at 13-57.  Langer also testified to this effect.  Id. at 59-129.

on statements made during the contempt hearing, on the present state of the record, the Court

declines to impose disciplinary sanctions or refer the matter to Chief Judge Bartle.[16]

## VII.   CONCLUSION

The myriad of motions addressed in this Memorandum relate to a fee dispute between

Peoples and Langer that was settled almost four years ago.  This drawn out personal quarrel

between the two of them must end.  It warrants no further imposition on the judicial system.

An appropriate Order follows.

---

[16] Langer also argues that disciplinary sanctions and referral to Chief Judge Bartle are appropriate as to Marcone. Without considering the merits, the Court declines to take such action on the present state of the record.

35