IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE LINERBOARD ANTITRUST LITIGATION | MDL No. 1261 |
| THIS DOCUMENT RELATES TO: Civil Action Numbers 98-5055 and 99-1341 | |

DUBOIS, J.                                                                                               OCTOBER 5, 2010

## MEMORANDUM

### I.   INTRODUCTION

Presently before the Court is the Memorandum Pursuant to Order of February 18, 2010 Concerning the Issues on Remand, filed by Robert J. LaRocca, counsel for Howard Langer, and related submissions, and interrogatories served by Peoples on Langer and objections to those interrogatories filed by Langer. These submissions represent the latest iteration in a protracted battle between attorneys Langer and John Peoples over the allocation of counsel fees in the underlying Linerboard Antitrust Litigation, MDL 1261. The Third Circuit, in an opinion dated January 14, 2010, remanded the case to this Court for further consideration of civil contempt sanctions against Peoples, relating to several instances of contempt during the pendency of the case. See In re Linerboard Antitrust Litig., 361 F. App'x 392 (3d Cir. 2010).

In light of the Third Circuit's ruling, Langer now seeks compensatory sanctions in the form of attorney's fees for time and resources expended litigating his contempt motions and subsequent appeal, and coercive sanctions in the form of a per diem fine for ongoing contempt violations. In response, Peoples requests a period of discovery, in which LaRocca would be

required to answer interrogatories regarding the amount of attorney's fees, followed by a hearing. For the reasons that follow, the Court sustains Langer's objections to Peoples's interrogatories, denies Peoples's request for further discovery on the issue of civil contempt sanctions, grants Peoples's request for a hearing on civil contempt sanctions, and defers ruling on Langer's motion for sanctions until after the hearing.

## II. BACKGROUND

The parties are intimately familiar with the facts of this litigation, which have been set forth in great detail on several occasions, most fully in this Court's Memorandum of July 15, 2008. See In re Linerboard Antitrust Litig., MDL No. 1261, 2008 WL 2758442 (E.D. Pa. July 15, 2008). The case began as a class action involving allegations that a number of U.S. manufacturers of linerboard engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Seven related lawsuits were transferred to this Court for all pretrial proceedings by the Judicial Panel on Multidistrict Litigation on February 12, 1999. After the Court certified two classes of plaintiffs, by Memorandum and Order of September 4, 2001, the parties entered into extended settlement negotiations. By the end of April 2004, with the Court's approval, all claims in the class action had been resolved for a total of $202,572,489 ("Settlement Fund").

On June 2, 2004, the Court awarded "a counsel fee of 30 percent of the [Settlement Fund] to all counsel with allocations to specific firms to be made by liaison counsel, Howard Langer, Esquire . . . ." Order of June 2, 2004 (Doc. No. 388); In re Linerboard Antitrust Litig., MDL No. 1261, 2004 WL 1221350, at *2 (E.D. Pa. June 2, 2004). What followed was a bitter and interminable dispute between Langer and Peoples over Peoples's share of these counsel fees,

which sadly continues to this day.

In the Memorandum of July 15, 2008, the Court identified several violations of Court Orders by Peoples during the pendency of the litigation. See In re Linerboard Antitrust Litig., 2008 WL 2758442. Specifically, based on a three day contempt hearing,[1] the Court found that Peoples: (1) violated the March 22, 2005 Emergency Temporary Restraining Order ("Emergency TRO") and the September 8, 2006 Consent Stipulation Order ("Consent Stipulation Order") by leaving a harassing telephone message on Langer's voicemail on June 29, 2006, and (2) violated the July 6, 2004 All Writs Injunction[2] by writing an unsubstantiated letter concerning Langer to the Disciplinary Board of the Supreme Court of Pennsylvania. See id. at *14, *16. However, the Court declined to impose sanctions on Peoples, after considering "the circumstances and consequences of Peoples's actions," and in view of the fact that there had been no further violations of the Orders over a two year period. Id. at *17. Moreover, the Court noted that its jurisdiction over the dispute would "end upon termination of the class action component of MDL No. 1261," and that any prospective fine would therefore be unenforceable by the Court. Id. The Court further vacated the Emergency TRO, the Consent Stipulation Order, and the All Writs Injunction. Id.

Langer subsequently filed a motion for reconsideration of the Court's July 15, 2008

---

[1] The Contempt Hearing took place on March 16, 2007, May 3, 2007, and May 4, 2007. Peoples testified at length during the hearing. See In re Linerboard Antitrust Litig., 2008 WL 2758442, at *6-*7.

[2] The All Writs Injunction enjoined "all attorneys who participated in any way in MDL 1261 including, but not limited to, John F. Peoples, Esquire . . . from taking any further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in any court or forum other than the United States District Court for the Eastern District of Pennsylvania." In re Linerboard Antitrust Litig., 2008 WL 2758442, at *3.

3

ruling. Langer presented new evidence demonstrating that Peoples was pursuing a state court action in the Delaware County Court of Common Pleas in which he sought to recover "his rightful share of the Linerboard fees." See In re Linerboard Antitrust Litig., MDL No. 1261, 2008 WL 4461914, at *4-*5 (E.D. Pa. Oct. 3, 2008). The Court determined that the "Delaware County Court case . . . [was] an attempt by Peoples, directly or indirectly, to force a reallocation of the fees by the numerous attorneys who represented the Box Class members in Linerboard." Id. at *4. In order to "prevent disturbing the overall allocation of the Linerboard Box Class counsel fee," the Court reinstated the All Writs Injunction of July 6, 2004. Id. at *8-*9. However, the Court declined to reinstate the Emergency TRO or the Consent Stipulation Order, despite evidence that People had placed an additional harassing telephone call to Langer. Id. at *9. The Court instead directed Langer to report the incident to police if he believed that the call was threatening, or violated the law. Id.

Both Langer and Peoples subsequently appealed to the Third Circuit. In an opinion issued on January 14, 2010, the Third Circuit affirmed this Court's rulings in all respects but one. See In re Linerboard Antitrust Litig., 361 F. App'x 392 (3d Cir. 2010). Specifically, the Third Circuit held that this Court erred when it "concluded . . . that it would lose jurisdiction over the case when the class action ended." Id. at 399. Since this Court relied in part on this conclusion in declining to impose civil contempt sanctions on Peoples, the Third Circuit vacated that part of the July 15, 2008 Order denying Langer's request for civil contempt sanctions, and remanded the case for "reconsideration of Langer's requests for attorneys fees in connection with past violations." Id.

Following the Third Circuit's Order and Opinion, this Court issued an Order dated

4

February 18, 2010, directing Langer to file and serve a memorandum of law covering the issues to be presented on remand, and directing Peoples to file and serve a responsive memorandum of law. On March 4, 2010, Langer filed a Memorandum seeking compensatory and coercive civil contempt sanctions against Peoples, in the form of attorney's fees and a per diem fine. Langer attached to the Memorandum a number of exhibits itemizing his claimed attorney's fees. Peoples filed a response to Langer's Memorandum, objecting to the imposition of sanctions and requesting both discovery and a hearing. The parties later filed a reply and sur-reply, respectively. In addition, Peoples served written interrogatories on Langer, relating to the amount of attorney's fees alleged in Langer's Memorandum. Langer promptly filed objections to the interrogatories.

In the meantime, on April 30, 2010, Peoples filed a Petition for a Writ of Certiorari with the Supreme Court. This Court deferred taking action on the matters which were the subject of the remand from the Third Circuit until the Supreme Court ruled on the Petition. The Supreme Court denied Peoples's Petition on October 4, 2010.

## III. DISCUSSION

Langer's request for civil contempt sanctions implicates two separate, but related, legal standards. First is the question of what process is due to Peoples in a civil contempt proceeding. Second is the appropriate procedure for determining what, if any, attorney's fees are reasonable and should be awarded. The Court will address these issues in turn.

Generally speaking, civil contempt sanctions require fewer procedural protections than criminal contempt sanctions. As the Ninth Circuit has observed: "Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such

5

sanctions have been required. Thus civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (citing Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827 (1994)).

A hearing on civil contempt sanctions may be necessary, depending on the circumstances of the individual case. Where the parties are given ample notice and an opportunity to respond, and the respondent fails to present any arguments creating any material issue of fact, the Ninth Circuit has held that a evidentiary hearing on contempt sanctions is not required. Ayres, 166 F.3d at 995-96; see also Hart's Rocky Mountain Retreat, Inc. v. Gayhart, 06-CV-01235, 2007 WL 2491856, at *1 (D. Colo. Aug. 29, 2007) (no hearing on civil contempt sanctions necessary where both parties submitted evidence along with their briefs, neither party requested a hearing, and there was no dispute about any of the material facts). However, due process may require a district court to hold a hearing, and allow relevant discovery, on civil contempt sanctions where there are disputed issues of material fact. See Tranzact Techs., Inc. v. 1Source Worldsite, 406 F.3d 851, 855 (7th Cir. 2005) ("Due process requires a district court to resolve relevant factual disputes — allowing discovery and holding an evidentiary hearing if necessary — in a civil contempt proceeding."); Ayres, 166 F.3d at 996; N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 589 (6th Cir. 1987). Moreover, even outside of the civil contempt context, the Third Circuit had held that where "hourly rates [in an application for attorney's fees] are disputed, the district court must conduct a hearing to determine the reasonable market rates." Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey, 297 F.3d 253, 265 n.5 (3d Cir. 2002).

The legal principles which guide a district court's discretion in determining reasonable attorney's fees are set forth in Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990):

> The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed. In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. The district court cannot decrease a fee award based on factors not raised at all by the adverse party. Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections . . . . The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigations multiplied by a reasonable hourly rate.

Id. (internal citations and quotes omitted). In Halderman v. Pennhurst State School & Hospital, the Third Circuit noted that "the formula for awarding fees in the contempt context is usually the more generous." 49 F.3d 939, 941 (3d Cir. 1995).

Notwithstanding Peoples's due process rights, Langer argues that Peoples has failed to meet his burden under Rode. Specifically, Langer observes that Peoples has not challenged, "by affidavit or brief with sufficient specificity," the hours or hourly rates set forth in Langer's memorandum. As a result, Langer contends, Peoples has waived any objection to those figures, and sanctions should be imposed against Peoples without any further discovery or a hearing.

While it is true that Peoples has not raised detailed challenges to the attorney's fee sanctions proposed by Langer, in view of Peoples's due process rights, this Court will not consider Langer's request for civil contempt sanctions without conducting an adversary hearing. Even though Peoples has not filed an affidavit or presented any evidence to oppose Langer's memorandum, he has clearly stated that he "opposes Langer's alleged hourly rate" and the number of billable hours alleged by Langer. Langer is correct that Peoples's submissions to date

7

fall short of satisfying the burden set forth in Rode. However, Rode involved only statutory attorney's fees and not civil contempt sanctions, which present different due process concerns. In this case, where Peoples faces possible coercive sanctions, in addition to the payment of attorney's fees as compensatory sanctions, the Court concludes that due process requires a hearing to resolve any disputed factual issues.

However, the Court will not grant Peoples's request for a period of discovery prior to the hearing. As outlined above, the Court need only permit discovery and conduct a hearing where such procedures are necessary "to resolve relevant factual disputes." Tranzact Techs., 406 F.3d at 855. Langer's Memorandum, and the exhibits attached to it, are sufficiently detailed to permit Peoples to determine whether or not the hours claimed are unreasonable for the work performed. See GMAC Bank v. HFTC Corp., 252 F.R.D. 253, 264 n.6 (E.D. Pa. 2008). In particular, Exhibit Two to Langer's Memorandum is an itemized list of all work performed, with a brief description and calculation of hours spent for each task. (Mem. Pursuant to Order of Feb. 18, 2010, Ex. 2.) Several other exhibits set forth applicable hourly rates for the law firm employees involved in the case, and provide support for such rates in the form of an affidavit from LaRocca, the partner with primary responsibility for the case, and a National Law Journal survey of law firm billing rates across the country. (Mem. Pursuant to Order of Feb. 18, 2010, Exs. 1, 3, 4.) Finally, Exhibit Five to Langer's Memorandum separately details non-attorney costs incurred during the contempt litigation. (Mem. Pursuant to Order of Feb. 18, 2010, Ex. 5.)

Based on Langer's Memorandum and attached exhibits, the Court concludes that Peoples possesses sufficient information to allow him to challenge Langer's claimed hours and rates at a hearing. Moreover, it appears to the Court that Peoples's interrogatories serve no legitimate

8

purpose, and are instead designed simply to harass Langer. For example, Interrogatory Ten states: "For each attorney hour spent . . . describe in detail why so much time was spent and what exactly you were doing for all that time and why you could not have performed the task in less time." The Court declines to permit such discovery. In so doing, the Court follows a number of other district courts in this Circuit which have denied similar requests for discovery in ruling on counsel fee petitions. See, e.g., Murphy v. Housing Auth. & Urban Redevelopment Agency, 158 F. Supp. 2d 438 (D.N.J. 2001); Brennan v. Springfield Twp., No. 97-5217, 1998 WL 792180, at *3 n.9 (E.D. Pa. Nov. 10, 1998); Rypinski v. Chevrolet Motor Div., No. 95-2256, 1996 WL 432475, at *1, *5 (E.D. Pa. July 22, 1996). Accordingly, the Court sustains Langer's objections to Peoples's interrogatories, and denies Peoples's request for any further discovery prior to a hearing on civil contempt sanctions.

## IV.  CONCLUSION

For the forgoing reasons, the Court: (1) sustains Langer's Objections to Peoples's Interrogatories on Langer Fee Application with Document Requests; (2) denies Peoples's request for further discovery on the issue of civil contempt sanctions; (3) grants Peoples's request for a hearing on civil contempt sanctions; and (4) defers ruling on Langer's motion for sanctions until after the hearing.

An appropriate order follows.